### YOUNG v. BOHN.

#### (Circuit Court, D. Indiana. January 10, 1905.)

#### No. 10,331 (1,052).

CUSTOMS DUTIES—CLASSIFICATION—ARCHITECTURAL DRAWINGS—WORKS OF ART —AMERICAN ARTIST—ARCHITECT.

 Pen and ink drawings of an artistic character, of a proposed building, produced by an architect, are within paragraph 703, Free List, § 2, c. 11, Tariff Act July 24, 1897, 30 Stat. 203, U. S. Comp. St. 1901, p. 1690, relating to "works of art, the production of American artists."

On Application for Review of a Decision of the Board of United States General Appraisers.

The decision below, which is reported as G. A. 5,609, T. D. 25,104, reversed the assessment of duty by the surveyor of customs at the port of Indianapolis. The opinion filed by the Board of General Appraisers is as follows:

SOMERVILLE, General Appraiser. The importation was made at the port of Indianapolis, Ind., in April, 1903, and consists of pen and ink drawings executed by Mr. Arthur Bohn, who is described as a well-known architect of Indianapolis, with the accompanying statement that the design prepared by him has been accepted by the Indianapolis Art Association for an art mu-

seum. Mr. Bohn makes affidavit in due form, verified before the United States deputy consul general at Paris, France, declaring that he is a citizen of the United States of America and by profession an architect; that his place of permanent residence is at Indianapolis, in the United States; that he departed from the United States to take up his temporary residence in Europe; that he has not given up, nor is it his intention to give up, his residence in the United States; and that it is his purpose to return ultimately to this country. He further states under oath that the architectural drawings in question, described as a design for an art museum, valued at 600 francs, are his own production, having been produced at Paris and Karlsruhe during the year 1903. The surveyor assessed these drawings for duty at 20 per cent., under paragraph 454, Schedule N, § 1, c. 11, Tariff Act July 24, 1897, 30 Stat. 194 [U. S. Comp. St. 1901, p. 1678], which provides that rate of duty for "paintings in oil or water colors, pastels, pen and ink drawings, and statuary, not specially provided for" in said act. The claim made in the protest is that the articles are free of duty, under paragraph 703, § 2, Free List, of said act (30 Stat. 203 [U. S. Comp. St. 1901, p. 1690]), which places on the free list, among other articles, "works of art, the production of American artists residing temporarily abroad."

The questions presented for our decision are: First, whether these drawings are of such artistic character as to fall within the descriptive term "works of art," as used in said paragraph; and, secondly, whether an architect may be regarded as an "artist" within the ordinary signification of that word. The photographs of these drawings introduced in evidence at the hearing before the board represent longitudinal and perspective views of the proposed building. They clearly represent mere sketch drawings, not available for practical building work, for which purpose separate drawings must necessarily be made. The photographs represent a building unquestionably of an artistic character, with six Doric columns in front and a frieze on the cornice, with statuary placed in various positions in front of the building, and front doors of elaborate workmanship.

While the usual definition of an "artist" would perhaps be confined to an adept in any of the fine arts, especially in painting, or to one who makes a fine art, especially a plastic art, his profession, the word would also embrace one who, in any department, does his work according to the constructive principles of art, or works artistically; and in this sense the term would be broad enough in our opinion to include an architect, a term which is defined as "one skilled in practical architecture, one whose profession is to devise plans or ornamentation of buildings or other structures and to direct their construction." We are unable to draw any sound distinction as works of art between a pen and ink drawing of men, animals, or other objects, artistically executed, and a painting of the same objects. In fact, such drawings are associated for tariff purposes in the same paragraph with paintings and statuary, and derive color of meaning from them, upon the principle of "noscitur a sociis."

Architecture has always been historically classified as an art, and in a certain sense a skilled architect, therefore, may be an artist. In Dr. Smith's History of Greece, in a chapter on "The History of Art," the author observes: "Architecture first claims our attention in tracing the history of Grecian art, since it attained a high degree of excellence at a much earlier period than either sculpture or painting." Further observing that architecture had its origin in nature and religion, he adds: "In Greece, however, as in most other countries, architecture was chiefly indebted to religion for its development, and hence its history as a fine art is closely connected with that of a temple. He also speaks of works of art "in sculpture, architecture, and painting," and observes that sculptors in the age of Pericles possessed great practical skill "in the sister arts of painting and architecture." The architects of the Roman Pantheon or of the Parthenon of Athens were undoubtedly artists, and so of others who planned the Temple of Diana at Ephesus, and that of Juno at Samos. So Ruskin, in his essay on "The Sublime in Architecture," styles it "the primal art of man," and leaves no room for doubt that he who could design a structure like St. Peter's at Rome, or St. Paul's, London, must be an artist in the truest sense of the term. These authorities are quoted to il-

lustrate the fact, not that every architect is an artist, but that architecture is itself an art, and that one who follows this profession may achieve the reputation and position of an artist, in the ordinary sense of the term.

We are accordingly of the opinion that the design of the building, which is shown to have been accepted by the Indianapolis Art Association for an art museum, is artistic in character and is a work of art, and that the author of it is an artist, within the meaning of that term as used in the tariff act. The evidence leaves no doubt of the fact that the designer is an American citizen residing temporarily abroad. In re Knoedler, G. A. 4,727, T. D. 22,363, affirmed in Knoedler v. U. S. (C. C.) 113 Fed. 999.

The protest is sustained, and the decision of the surveyor reversed, with instructions to reliquidate the entry.

In his application for review of the foregoing decision the surveyor assigned the following points of error: (1) That the pen and ink drawings of an architect are not works of art within the meaning of said paragraph 703; and (2) that an architect is not an artist within the meaning of the same provision.

Joseph B. Kealing, U. S. Atty., for the surveyor.

ANDERSON, District Judge. The above-entitled cause being an application on behalf of A. A. Young, surveyor of customs at the port of Indianapolis, Ind., for a review of the findings and decision of the Board of General Appraisers upon a protest of the said Arthur Bohn to the assessment of duties upon pen and ink drawings made by him while temporarily residing abroad, and imported to this country as drawings and plans for an art museum at Indianapolis, Ind., the said matter being presented to the court both on behalf of the said Arthur Bohn and the said surveyor of customs, the court finds; that said Arthur Bohn is an architect, a citizen of the United States, and resident of Indianapolis, Ind.; that while temporarily residing abroad he made said pen and ink drawings referred to in the application for review herein and imported them to this country; that they are of the value of 600 francs; that they are "works of art," within the meaning of the tariff law of the United States, and should be permitted to be imported into this country.

It is therefore considered and adjudged by the court that the decision of the Board of General Appraisers, as heretofore made in the said proceedings, be affirmed; and it is so ordered.