# Pride *v.* Commercial Union Insurance Co., Limited.

## *Assumpsit.*

(Decided November 13, 1913. Rehearing denied December 9, 1913. 63 South. 803.)

1. *Contracts; Consideration; Criminal Act.*—A criminal act is not a valid consideration to support a contract.

2. *Same.*—Where a foreign insurer refused to pay commissions due his broker, who failed to procure a license as required by the statute, and the broker sues for money received, claiming that the insurer received commission paid by the insured, partly for his benefit, he cannot recover it, since in the establishment of the right asserted the broker must show his criminal conduct in writing the insurance without having obtained the license required.

3. *Same; Illegal Contract.*—The reason that the law will not permit a recovery on an illegal contract is based on public policy, and not for the protection of defendant who sets up and relies on the illegality of the contract.

4. *Same.*—While the illegality of a contract is no defense to an action for money paid to one of the parties for the use of the other, the contract being fully executed, yet where an insurance broker without having procured the statutory license wrote insurance for a foreign insurer, no action for money received to the use of the broker can be maintained against the insurer, even though such insurer agreed to pay him a percentage of the insurance received, since the contract was not fully executed on the part of the insurer by accepting the premium, and the only consideration was the broker's illegal contract.

5. *Same; Commissions; Right to Recover.*—Where a broker acted as agent for a foreign insurance company without having procured the license required by Acts 1909, p. 120, the foreign insurer was not precluded from setting up the illegality of plaintiff's act so as to defeat his action for the commission by the fact that sec. 4561, Code 1907, required the foreign insurer to obtain a certificate of authority for plaintiff to act as his agent; there being no such presumption of compliance with the law in favor of a plaintiff seeking to maintain his action involving the commission of a crime by himself as would arise in the case of an innocent plaintiff.

6. *Pleading; Conclusion; Complaint.*—Where a count in a complaint for money had and received does not set forth the state of facts upon which the defendant was liable, the facts alleged cannot be aided by the pleader's conclusion that defendant was liable.

7. *Money Had and Received; Right of Action; Obligation.*—Where it is claimed that a payment by a debtor was in part for the use of

[Pride v. Commercial Union Insurance Co., Limited.]

a third person, 'the claim is not supported unless something more is shown than the mere fact of the payment, and that the creditor was under promise to such third person that he should have part of the money so paid, and if there is no such showing, the right of such third person must depend wholly upon the promise.

8. *Same; Effect of Assignment.*—Where the agent of a foreign insurance company sued for money had and received, on the theory that the insurer had assigned to him a percentage of the commissions to be paid by those insured, those insured were under no liability to him as assignee, and were entitled to pay the whole amount of the premium to the insurer, as if no assignment had been made, unless they consented to such partial assignment.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by Thomas E. Pride against the Commercial Union Insurance Company, Limited, of London, England, for money had and received. Judgment for defendant, and plaintiff appeals. Affirmed.

The complaint alleges that the sum of $740.35 was due, from the defendant, by virtue of the fact that by an agreement with Haas & McIntyre, general agents of the defendant company, plaintiff was to solicit insurance on behalf of defendants, on cotton to be exported by the cotton firm of Harris, Cortner & Co., doing business in the city of Decatur, by which certain premiums of insurance were to be exacted by the defendant. company and the plaintiff from said Harris, Cortner & Co., from insurance which plaintiff was to procure from said company; one-tenth of the premiums to belong to plaintiff, and nine-tenths to be the property of defendant. Plaintiff then alleges that the premiums paid defendant by said concern amounted to $7,403.50, and that one-tenth of that was the property of plaintiff, was received by defendant for use of plaintiff, and has never been remitted or paid plaintiff.

TIDWELL & SAMPLE, for appellant. A defendant when sued cannot take advantage of his own wrong to defeat

a plaintiff's demand. The duty was on defendant to obtain a certificate of authority for plaintiff and it cannot take advantage of its failure to do so, to defeat plaintiff's demand.—Sec. 4561, Code 1907. The presumption is conclusive that defendant had complied with the law by constituting plaintiff its agent, and if it did not, its mouth is closed, and it cannot deny that in fact it had not complied with the law.—13 Cyc. 878; *Brooklyn I. Co. v. Bledsoe,* 52 Ala. 538; 73 Fed. 285; 55 Fed. 29; 1 Fed. 471. The party least guilty will be given relief where both are in delicto, but not in pari delicto.—15 A. & E. Ency. of Law. 1004; 9 Cyc. 555; 73 Fed. 285. The court erred in sustaining the demurrer to the complaint.—*Ingersoll v. Campbell,* 46 Ala. 282; *Schieble v. Bancho,* 41 Ala. 430; *Lea v. Casson,* 61 Ala. 312; 11 Wheat. 258; 1 B. & P. 296; 17 How. 232; 60 Am. St. Rep. 509; 99 Am. Dec. 58; 22 Ind. 207; 30 Am. Rep. 101; 27 Cyc. 875.

E. W. GODBEY, for appellee. The statute making it criminal for Pride, as unlicensed agent of a foreign marine insurance company, to write insurance in Alabama, precluded him from recovery of compensation.— Acts 1909, pp. 120-121; *Dudley v. Collier,* 87 Ala. 431; *Thorne v. Travelers Ins. Co.,* 21 Am. St. 89; *Boyd v. Barclay,* 1 Ala. 34; *Alexander v. Barker,* 67 Pac. 829; 15 Am. & Eng. Enc. Law, 2nd Ed. p. 1008; *Banking Company v. Lichenstein,* 37 Ala. 574; 19 Cyc. 1307; 9 Cyc. 560; *Sullivan v. Hergan,* 9 L. R. A. 110; *Paul v. Virginia,* 8 Wall. 183, 19 L. Ed. 357; *Grand Lodge, etc., v. Grand Lodge,* 56 South. 963; *Black v. Security, etc., Ass'n.,* 54 L. R. A., 939; *Harding v. Hardage,* 60 Me. 340; *Balding v. Pitkin,* 2 N. Y. Com. Law 362. The allotment to appellant of a certain per cent of the illegally earned premiums, and to appellee of a certain

other per cent., after they have been paid to appellee, by a party from whom due, "would be in reality an enforcement of the illegal scheme."—*Wheeler v. Sage,* 17 L. Ed. 649, 68 U. S. 530; *Mariscano v. Mayor, etc.,* 51 South. 608; *Alexander v. Barker,* 67 Pac. 829; *Buck v. Albee,* 62 Am. Dec. 564, 566; *Barrow v. Pike,* 21 La. Ann. 14; *Banking Company v. Lichtenstein,* 37 Pac. 574; *Everett v. Williams,* 2 Poth. Obl. 3; *Spalding v. Preston,* 21 Vt. 9; *Woodworth v. Bennett,* 3 Am. Rep. 709; *Texas, etc., Ry. Co. v. S. P. Ry. Co.,* 17 Am. St. Rep. 445; *Armstrong v: Toler,* 11 Wheat. 258; 6 L. Ed. 468; *McMullen v. Hoffman,* 43 L. Ed. 1125, 174 U. S. 659; *Lemon v. Grosskopt,* 99 Am. Dec. 58. Positively criminal act cannot be healed by payment to stake holder or third person.—*Watson v. Murray,* 23 N. J. Eq. 257. Appellant cannot recover by merely showing that Harris, Cortner & Company paid over illegally earned, but undivided, premiums to appellee (the insurer) for itself and appellant jointly, and according to certain percentages, but must show the entire illegal transaction, which would be fatal.—*McMullen v. Hoffman,* 43 L. Ed. 1125, 174 U. S. 658; *Banking Co. v. Lichtenstein,* 37 Pac. 574. To support appellant's claim to such an allotment, there is wholly lacking that distinct, independent and collateral consideration, which is absolutely essential.—*Phalen v. Clark,* 50 Am. Dec. 253; *Goodrick v. Tenney,* 19 L. R. A. 376, 33 N. E. 44; *Dent v. Ferguson,* 132 U. S. 50, 33 L. Ed. 242; *Armstrong v. Toler,* 11 Wheat. 258, 6 L. Ed. 468; *Morrison v. Bennett,* 40 L. R. A. 158; *Buck v. Albee,* 62 Am. Dec. 564; *McMullen v. Hoffman,* 43 L. Ed. 1125, 174 U. S. 659; *Snell v. Dwight,* 120 Mass. 9. In addition to lack of such distinct, independent and collateral *consideration,* there is lacking the further essential ingredient of new and independent *promise* based thereon.—*Leon-*

*ard v. Poole,* 4 L. R. A. 732; *Goodrich v. Tenney,* 19 L. R. A. 371; *Texas, etc., Ry. Co. v. S. P. Ry. Co.,* 17 Am. St. 445; *Buck v. Albee,* 62 Am. Dec. 564; *Armstrong v. Toler,* 11 Wheat. 258. The fact that the illegally earned premiums were paid only to one who was himself a party to the illegal transaction (the insurer himself) by the insured, is fatal to appellant's claim.—*Thompson v. Thompson,* 7 Ves. Jr. 470; *McMullen v. Hoffman,* 43 L. Ed. 1125; *Goodrich v. Tenney,* 19 L. R. A. 371; *Snell v. Dwight,* 120 Mass. 9; *Armstrong v. Toler,* 11 Wheat. 258; *Lemon v. Grosskopt,* 99 Am. Dec. 58. The lack of segregation in the transaction of paying over or receiving of that part which was to be appellant's, from that part which was to belong to appellee, is likewise fatal.—*Leonard v. Poole,* 4 L. R. A. 728; *Hoffman v. McMullen,* 45 L. R. A. 419; *Hanks v. Baber,* 53 Ill. 292; *Chace v. Trafford,* 116 Mass. 532, 17 Am. Rep. 171; 1 Am. & Eng. Enc. of Law, 2nd Ed. p. 437. Appellant who committed a crime in negotiating the insurance cannot support his action for a share of the illegally earned premium by contending that he was somewhat less guilty than appellee, who was not punishable for failing to equip appellant with the regulation credentials.—*Leonard v. Poole,* 4 L. R. A. 732; 19 Cyc. 1307; 9 Cyc. 560; *Sullivan v. Hergan,* 9 L. R. A. 110; *Grand Lodge v. Grand Lodge,* 56 South. 863; *Black v. Security, etc., Ass'n,* 54 L. R. A. 939; *Harding v. Hardage,* 60 Me. 340; *Belding v. Pitkin,* 2 N. Y. Com. Law. 362.

WALKER, P. J.—To the original complaint in this case a special plea was interposed, which averred "that the sum sued for in this action, and each and every count thereof, is compensation, reward, hire, or commission claimed by the plaintiff for the following services, to wit: For soliciting insurance in this state,

since August 25, 1909, on behalf of the defendant, a foreign insurance company not incorporated in this state, of Harris, Cortner & Co.; and defendant says that at the time of the performance of such service and work, and prior thereto, the plaintiff had not received a proper certificate from the Insurance Commissioner, authorizing him to perform any of the actions of an agent of such company." There were other special pleas which in their averments were similar to the one quoted, except that the services rendered by the plaintiff were in such other pleas, respectively, alleged to be other acts which by the provisions of section 1 of the "Act to amend section 7189 of the Code of Alabama," approved August 25, 1909 (Acts of Ala., Special Session 1909, p. 120), are given the effect of making the person doing them an insurance agent. The second section of the statute referred to makes it a misdemeanor for such person to do for another any of the acts mentioned until the insurance company, for or in behalf of which it is done, shall have complied with the laws of the state, and received the proper license or certificate authorizing it to do business in this state, and until such person shall have received the proper certificate from the Insurance Commissioner authorizing such person to perform any of the acts of an agent for such company. Appellant assigns as error the action of the court in overruling demurrers to these special pleas. The ground of demurrer which is relied on in the argument of the counsel for the appellant is the following: "Each of said pleas shows that the sum sued for in the plaintiff's action, and in each count thereof, is for compensation, hire, reward, or commission claimed by plaintiff for services performed for the defendant since the 25th day of August, 1909, and each of said pleas shows upon its face that the services performed for defendant

were the services of an agent, and a conclusive presumption arose by reason of the fact that plaintiff performed the services for defendant as its agent that the defendant had complied with section 4561 of the Code of Alabama 1907, and had obtained a certificate of authority for plaintiff to do and perform the acts as agent that each of said pleas alleged he did perform; and defendant cannot be heard to deny that it had not in fact complied with the requirement enjoined upon it by section 4561 of the Code of Alabama 1907, and that it had not in fact obtained the certificate of authority for the plaintiff to do and perform the acts that each of said pleas alleges he did perform."

In support of this ground of demurrer it is urged in argument that, as the statute (Code, § 4561) made it the duty of the defendant insurance company itself to obtain from the Insurance Commissioner a certificate of authority for the plaintiff as its agent in this state, in an action by that agent against such company the latter cannot be heard to say that it failed to secure such certificate. In this connection the decision in the case of *Brooklyn Life Insurance Co. v. Bledsoe,* 52 Ala. 538, is referred to. That was an action on a policy issued by a foreign insurance company. It was held that the defendant could not, in avoidance of the contract sued on, set up its own failure to procure the certificate of authority which the statute then in force required to entitle it to do business in this state. In passing upon the question there presented it was said in the opinion: "While it is a settled principle that a contract founded on an act prohibited by statute is void, yet it is subject to this qualification. That, although the Legislature may forbid the doing of a particular act, a party not a privy to it, or involved in the guilt of the transaction, may recover of the guilty actor, unless the act itself is

[Pride v. Commercial Union Insurance Co., Limited.]

void.  *  *  *  The statute did not declare void the policy or contract of insurance made here, by a foreign company, without a certificate of authority. Its purpose was not to absolve the company from liability on its contracts made here. The object was to afford our own citizens ample security against loss, because of transactions had here with the companies. The company and its agents are alone guilty under the statute, if they violate it. Such violation they cannot invoke as a protection from liability on their contracts." This statement by the court of the reasons supporting the conclusion reached in that case is enough to prove that it is a perversion of that ruling to invoke it in favor of a plaintiff whose own act upon which he relies as the ground of the recovery sought is itself a criminal offense. We are not cited to any authority which furnishes support to the proposition that the presumption of a compliance with the law which is indulged against a defendant corporation in favor of an innocent plaintiff with whom it has contracted (13 Am. & Eng. Ency. of Law [2d Ed.] 875) is also to be indulged in favor of a plaintiff who is seeking to maintain his action on a transaction which involved the commission of a crime by himself. A clear distinction between such cases as the one just referred to and the one at bar is that in the former the defendant undertakes to set up its own failure to comply with the law, while in the latter the defendant is setting up a criminal breach of the law by the plaintiff himself. We know of no rule of law which forbids a defendant, though he is guilty himself, to set up a state of facts showing that to permit the plaintiff to maintain his action would amount to allowing him to recover compensation for the commission of a crime. To recognize the failure of the defendant insurance company to do what the law required of it to entitle it to

do business in this state by agent as an excuse for the conduct of one who acted as its agent in transacting such business in this state without having received the proper certificate authorizing him to do so would contravene the plain purpose of the criminal statute above referred to, in prohibiting the doing of the things specified by any one for or as the agent of a foreign insurance company who had not received the proper certificate from the Insurance Commissioner authorizing him to perform such act of agency. The prime object of the statute was to prevent the performance of such acts by the agent when there has been such failure on the part of his principal. "The law will not allow a right to spring from its own deliberate violation."—*Jemison, et al. v. Birmingham & Atlantic R. Co.,* 125 Ala. 378, 28 South. 51; 1 Page on Contracts, § 332. A criminal act is not a valid consideration to support a contract, either express or implied. The averments of each of the special pleas above mentioned showed that the plaintiff's action was for the recovery of compensation, reward, hire, or commission for committing a misdemeanor. The demurrers to those pleas were properly overruled.

If in such a case the plaintiff could improve his position by showing that the defendant was more in fault than he was, no benefit could accrue to the plaintiff in this case as a result of a comparison of his conduct with that of the defendant. His violation of a criminal statute certainly was not, in the eye of the law, a fault less grave than that of the defendant insurance company in engaging in business in this state without having done what the law required to entitle it to do so.

The plaintiff amended his complaint by adding count A. This count claimed $740.35 and interest thereon for money had and received for the use of the plaintiff,

[Pride v. Commercial Union Insurance Co., Limited.]

the count specifying substantially as follows the manner of the defendant's receipt of the amount claimed: Plaintiff made a contract with Haas & McIntyre, the general agents of the defendant a foreign insurance company, to procure from Harris, Cortner & Co., a cotton firm doing business in Decatur, insurance for them in the defendant company on cotton to be exported. Premiums were to be charged on all cotton insured under this arrangement, and one-tenth of the premiums exacted from the insured on all policies issued to them by the defendant "was to be, and was the property of the plaintiff"; the defendant being entitled to only the remaining nine-tenths of such premiums. During the month of November, 1910, the plaintiff secured from Harris, Cortner & Co., insurance in the defendant company the premiums on which amounted to $7,403.35. The insured paid to the defendant, on account of premiums accruing on the policies so issued by the former to the latter, $6,753.50, of which amount the count asserted that the plaintiff was entitled to $740.35 as the first one-tenth collected. The count avers "that the said sum in the hands of said Harris, Cortner & Co. was the money of the plaintiff, and that the said Harris, Cortner & Co. was due plaintiff said amount of money for and on account of his one-tenth interest in the premiums of insurance as hereinabove alleged." When the plaintiff negotiated or obtained from the insured the contracts of insurance, he had not received any license from the Insurance Commissioner. The count concludes with assertion to the effect that the demand sued on is not for doing any of the things the effect under the statute of doing which was to make him an insurance agent, but that "said amount of money is due him for money had and received by the defendant company, which sum of money, to wit, the sum of $740.35, was

had and received by the defendant company from Harris, Cortner & Co., and which sum of money was in settlement of an existing indebtedness that the said Harris, Cortner & Co. was due the plaintiff, as hereinabove alleged."

To pass on the demurrer to this count, it is necessary, first, to apprehend the state of facts disclosed by its averments as the basis of the claim asserted. As it specifies the particular facts which are relied on as constituting a receipt of money by the defendant for the use of the plaintiff, in construing its averments the nature of the transaction is to be determined from the facts as specifically averred, and if these specific averments do not show the existence of a state of facts on which the defendant is chargeable with liability for money had and received for the use of the plaintiff, the count is subject to appropriate demurrer, and the statement contained in it of the pleader's conclusions that such liability exists will not serve to cure the defective specification.—*Birmingham Railway, Light & Power Co. v. Barrett,* 60 South. 262; *Chattanooga Brewing Co. v. Smith,* 3 Ala. App. 551, 58 South. 63; *Johnson v. Birmingham Railway, L. & P. Co.,* 149 Ala. 529, 43 South. 33.

In the previous allegations referred to in the above-quoted concluding sentence of the count, there is not an intimation that the insured, Harris, Cortner & Co., were in any way parties to the agreement or arrangement as to the compensation or commission to be paid to the plaintiff, or that at the time of the payment made by them to the defendant they were even aware of the existence of any unsatisfied claim of the plaintiff for compensation for services rendered to or for the defendant in connection with the insurance contracts. It is not averred that they had any dealings at all with

[Pride v. Commercial Union Insurance Co., Limited.]

the plaintiff except in his capacity as agent for the defendant in the negotiation or placing of the policies of insurance, or that they in any way undertook or consented to pay any part of the stipulated premiums accruing on the policies issued to them except to the insurance company issuing the policies, or that in making the payment alleged they made any suggestion or gave any direction as to how any part of it should be paid or disbursed by the defendant, or that the defendant agreed or consented to accept any part of the amount paid for any one other than itself, or otherwise than as a payment on the premiums payable to itself. The facts specifically averred show that the only liability which the insured incurred was to the defendant insurance company for the stipulated premiums on the policies issued by it, and there is an entire failure to show that they ever consented to be liable to the plaintiff for any part of the premiums, or that they ever undertook to pay anything to him or to another for him. Without such consent on their part, they were under no promise, either express or implied, to pay to the plaintiff the amount which the defendant's general agents had agreed that he should receive. Even if the averments of the count can be read as showing an assignment by the defendant to the plaintiff of the first one-tenth of the premiums collected, in the absence of the consent of the insured to that partial assignment of a demand against them, they were under no liability to him as the assignee, and were entitled to pay the whole amount of the premiums to the insurance company as if no assignment had been made or attempted to be made.— *Kansas City, Memphis & Birmingham R. Co. v. Robertson*, 109 Ala. 296, 19 South. 432; 4 Cyc. 27.

When a claim is made that a payment by a debtor to his creditor on an existing indebtednes was in part

made for the use of a third person, such claim cannot be supported unless something more is shown than the mere fact of such payment, and that the creditor was under promise to such third person that he should have the part of the amount paid which is claimed by him; as, when only these facts are shown, the inference must be that the sole consideration for the payment was the debt on which it was made. There is nothing in the act of one in paying his own debt to indicate a purpose to satisfy a claim which some one else has against the creditor to whom the payment is made; and the creditor, by merely accepting the payment so made to himself, does not thereby impliedly make a new promise to pay to a third person the amount which he had previously promised to pay when the collection was made. Such previous promise is not executed by the mere happening of the event upon which it was agreed to be performed. If the promisor then fails or refuses to carry out his promise, the promisee's sole reliance continues to be on the original promise, as there is neither a new promise to him, nor any new and independent consideration to support it. As the count sets out the particular facts relied on as constituting a payment by the insured to the defendant for the use of the plaintiff, and as the facts specifically averred show that the payment made was on account of the premiums accrued on policies of insurance issued by the defendant, and fail to show that the insured had even any knowledge of the existence of the claim of the plaintiff that he was entitled to a part of the sum paid, or that the insurer, either expressly or impliedly consented to the satisfaction of that claim, it must be held that the allegation of the particular facts relied on show that the payment was made to the defendant insurance company for its own use, and not in part for the use of another, and that

the failure of such allegations to show that any part of the amount was paid for the use of the plaintiff is not cured by the general averments to the effect that, as to a part of such amount, the payment was made for the use of the plaintiff. These general averments, when considered in the light of what is shown and what is failed to be shown by the plaintiff's specification of the particular facts upon which he relies to support the claim asserted by him, show no more than the mistaken conclusion of the pleader that the effect of the agreement with the plaintiff as to the part of the collected premiums which was to be his was to make the amount of such part of his property while it was still in the hands of the insured ready to be paid to the insurer, and to make the payment of it to the insurer, the defendant, a payment of money to it for the use of the plaintiff. There is no room for a conclusion that a payment made under such circumstances was, or was intended by the parties making and receiving it to be, in performance or execution of a contract with which the parties making the payment had no connection, of which they had no knowledge or information, and with which they had no concern, and which the party receiving the payment had not consented to execute or perform. Certainly a payment by a debtor to his creditor on an existing debt is not in whole or in part, a payment for the use of a stranger to the transaction, when neither of the parties to it either expressly or impliedly agrees or consents that it is to have that effect.

It is not to be questioned that the count under consideration was subject to the demurrer interposed to it if its averments are construed as showing that the plaintiff (appellant here) requires, for the establishment of the right which he asserts, the aid of his criminal conduct in procuring in this state the issuance of

policies of insurance by a foreign insurance company without having obtained the license required to authorize him to do so.—1 Page on Contracts, § 527.   It is contended by his counsel that that count shows the existence of a state of facts on which the action may be maintained under the rule which is stated as follows in 27 Cyc. 875: "When the contract has been fully executed its illegality is no defense to an action to recover money paid on the contract by one of the parties to a third person for the use of another"—and the case of *Ingersoll v. Campbell*, 46 Ala. 282, is cited as such a recognition and application of that rule in this state as to show that it is available, to the benefit of the plaintiff, under the facts of the instant case.   The facts in that case were that the plaintiff, Campbell, received, as part compensation for an illegal service rendered by him in violation of a blockade, the sum of $1,000, which he deposited with the defendant Ingersoll, who was the agent of the party with whom the plaintiff contracted to render such service.   The court held, as stated in the headnote, that "money earned upon such a contract, and paid to the party earning it, vests in the person so earning it a good and legal title; and if; after such payment, he deposits or leaves such money with a person to keep it for him, he may recover it from him, although the person with whom the money was so left, as agent for another, made the contract to violate such blockade." It is plain that the amount allowed to be recovered in that case had already been paid on the illegal contract; as to such amount the party who was to make the payment having fully executed the contract.

In this respect that case is like the later one of *Gipson v. Knard*, 96 Ala. 419, 11 South. 482, in which the plaintiff, who was the part owner of a lottery ticket, was permitted to recover his part of the amount which

had been paid on the ticket to the defendant for the use of the plaintiff. It was held that the defendant who had so received money for the plaintiff could not set up the illegality of the lottery contract which had been fully executed. Reference is made in the argument to the English case of *Farmer v. Russell,* 1 Bos. & Pul. 296, as a leading instance of the application of the rule above stated . In that case, as stated by Chief Justice Marshall in the opinion rendered by him in *Armstrong v. Toler,* 11 Wheat. 258, 6 L. Ed. 468, "it was held that if A. is indebted to B. on a contract forbidden by law, and pays the money to C. for the use of B., a court will give judgment in favor of B. against C. for this money. In this case, B. could not have recovered against A., but when the money came into the hands of C., a new promise was raised on a new consideration, which was not infected by the vice of the original contract."

Such cases as those just mentioned are wholly different from the one at bar. In the latter it is not made to appear that anything has been done in execution or performance of the contract to pay the plaintiff for the services the rendering of which involved the violation of a penal statute by him. The only payment shown to have been made was made, not by the defendant, but by a third party to the defendant on a debt owing by such third party, not to the plaintiff, but to the defendant alone. The facts averred show that the payment by such third party was in performance of its own contract, to which the plaintiff was a stranger, and not at all in execution of another's contract with the plaintiff. This latter contract remains wholly executory so far as its provision for a payment to the plaintiff is concerned. The defendant has paid nothing on it, and has not agreed or consented to accept or to hold any part of a payment made to it by another as a payment to or

for the plaintiff. In receiving the only payment alleged to have been made to it by another, it acted as a principal in collecting a demand in its own favor against the party making the payment, and not as the plaintiff's agent in making a collection from one who paid his own debt to the defendant, in ignorance of the existence of the plaintiff's claim. The count under consideration shows that the plaintiff, under a contract made with the defendant's general agents, procured, in violation of law, the issuance of policies of insurance by the defendant, upon which premiums were payable to the latter, the first one-tenth of which when collected was to belong to the plaintiff; it shows further that the defendant has collected more than one-tenth of the premiums payable to it, but it does not show that the defendant, or any one else, has done anything which is entitled to be given the effect of a payment to the plaintiff, or to another for his use, of the part of the collected premiums which he was to get. The defendant had the right, so far as its relations with the plaintiff were concerned, to waive the illegality of the service rendered by the latter, and to pay him for it according to the agreement made by its general agents; but the averments of the count do not show that it has done so. On the contrary, they show that it has collected on the premiums an amount greatly in excess of the one-tenth which the plaintiff was to have, and that it has failed and refused to pay him anything. And the defendant by its demurrer to the count under consideration raises the objection to it that it shows that the claim which it asserts is based upon conduct of the plaintiff which was a violation of a penal statute. This objection was properly sustained, as the averments of the count, as we have construed them, show that the only contract that has been made with the plaintiff is the one under

which his illegal service for the defendant was rendered, upon which he must rely to maintain his action —those averments not showing any new or subsequent contract, either express or implied, under which the defendant, for a new and independent consideration moving to it, has subjected itself to liability to the plaintiff for the amount sued for, or any part of it.—*Goodrich v. Tenney*, 144 Ill. 422, 33 N. E. 44, 19 L. R. A. 371, 36 Am. St. Rep. 459.

The result of the above conclusion is that the defendant is allowed to have the benefit of the plaintiff's illegal act, done at its instance and in its behalf, and to refuse to pay him for it as promised. The plaintiff fails because, to maintain his action, he must rely on conduct of himself which was a violation of a penal statute, and not because the defendant was any less in fault than he was. The courts do not undertake to enforce the rules of honor which a lawbreaker may expect to be observed by one who has received the fruits of his misconduct under a promise to share such fruits with him.

In *Holman v. Johnson*, Cowp., 343, Lord Mansfield said: "The objection that a contract is immoral or illegal, as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of policy, which the defendant has the advantage of, contrary to real justice as between him and the plaintiff—by accident, if I may so say. The principle of policy is this: 'Ex dolo malo non oritur actio.' No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If, from the plaintiff's own stating, or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of the law of this

country, then the court says he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So, if the plaintiff and defendant were to change sides, and the defendant were to bring his action against the plaintiff, the latter would have the advantage of it, for when both are equally at fault, 'potior est conditio defendentis.'" These familiar propositions are repeated here to make it plain why the plaintiff must be denied the right, on the state of facts disclosed, to have any redress for what he may well regard as pretty shabby treatment at the hands of the defendant.

Affirmed.


