[Civ. No. 4140.   Second Appellate District, Division Two.—April 10, 1926.]

## J. T. PAYNE, Respondent, v. THOMAS T. DE VAUGHN et al., Appellants.

[1] ARCHITECTS — PRACTICE OF ARCHITECTURE — CERTIFICATE — STATUTORY CONSTRUCTION.—By the act of March 23, 1901, regulating the practice of architecture (Ann. Stats. 1903, p. 522), it is made a misdemeanor for any person to practice architecture in this state without a certificate, regardless of whether or not he may also have held himself out to the public or to any person as an architect.

[2] ID.—SERVICES RENDERED BY UNLICENSED ARCHITECT—EXCEPTION OF STATUTE—BURDEN OF PROOF.—Under the act of March 23, 1901, regulating the practice of architecture (Ann. Stats, 1903, p. 522), the only way in which a person who has no certificate can legally render architectural services is by informing the person for whom he furnishes plans or other data for buildings that he is not a certified architect, and in an action by an unlicensed architect to recover for architectural services, the burden is upon him to prove that he has brought himself within the exception of the statute by giving the person for whom the services are performed the information that he is not a certified architect.

[3] ID. — ARCHITECTURAL SERVICES — VOID CONTRACT. — A person who contracts to make all necessary plans and specifications, supervise the bids from subcontractors, and supervise the construction of a proposed building, contracts to render the services of an architect; and where such person is not a licensed architect, and does not inform the parties for whom the services are rendered that he is not a certified architect, within the meaning of the act regulating the practice of architecture, a contract for the payment for his services is void.

[4] ID.—UNLICENSED ARCHITECT—CONTRACTS—PARTIES.—An unlicensed architect cannot avoid the effect of the statute upon the theory that, although he was a contracting party, prepared the plans and specifications, and agreed to supervise the construction, the contract was legal because in reality he was not the principal architect, where the latter was not a party to the contract.

---

(1) 5 C. J., p. 255, n. 5, p. 256, n. 9.   (2) 5 C. J., p. 274, n. 72 New; 37 C. J., p. 261, n. 84, 85.   (3) 5 C. J., p. 255, n. 1, p. 256, n. 10; 37 C. J., p. 259, n. 50, p. 261, n. 69.   (4) 5 C. J., p. 256, n. 10:

3.   Failure of architect to procure license as affecting validity or enforceability of contracts, see notes in 30 A. L. R. 851; 42 A. L. R. 1228; 42 L. R. A. (N. S.) 125.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge. Reversed.

The facts are stated in the opinion of the court.

John C. Miles for Appellant.

Schweitzer & Hutton for Respondent.

CRAIG, J.—On or about April 14, 1921, it was agreed by a contract in writing "between Dr. Thos. T. DeVaughn, . . . and J. V. Spaugh, . . . hereinafter designated as party of the first part, and J. T. Payne, Architectural Engineer, . . . as party of the second part," that the latter should "make all necessary plans and specifications, supervise the bids from subcontractors, and supervise the construction of the proposed new class C theatre and office building," which the parties of the first part, appellants herein, contemplated having erected. It was also stipulated that respondent's compensation for such services should be four per centum of the total cost of the building, but that, should the owners fail to negotiate a loan for the purpose of constructing the building, or decide not to build, they should pay respondent two hundred dollars "for his sketches and services."

Respondent prepared and furnished to appellants an original sketch, and plans and specifications for a building, and received from them on account of such services the sum of $100. Thereafter appellants entered into a contract with one Zeller, who procured a loan for them, and prepared other and different plans and specifications, and a theater building was erected in accordance therewith. Respondent was not permitted to fulfill his part of the contract in suit —the reasons for which we need not recite—and he instituted this action for the sum of $1,072, alleged balance of commissions due under the terms of the contract.

Respondent testified at the trial that, although he had been preparing plans and specifications and supervising construction work for about ten years, and was "doing it every day," he did not have, and had never had, a license from the state board of architecture as required by the act of 1903 (p. 522). From his testimony it is clear that he

not only did not have such license, but that he did not intend to obtain one.

The trial court found that the building was erected at a total cost of $23,000; that the defendants refused to permit the plaintiff to supervise the bids or the erection of the building; that the reasonable value of the services performed by the plaintiff was $575, $475 of which remained unpaid, and gave judgment for the latter amount.

The defendants appealed from the judgment and order denying their motion for a new trial. The principal ground of attack upon the judgment is that, since respondent had no license, and did not inform the appellants that he was not an architect within the meaning of the statute, the contract was illegal and void.

The act in question (Act to Regulate the Practice of Architecture, March 23, 1901, Ann. Stats. 1903, p. 522), provides, in part, as follows: "After the expiration of six months from the passage of this act, it shall be *unlawful*, and it shall be a *misdemeanor*, punishable by fine of not less than fifty dollars nor more than five hundred dollars, for any person to practice architecture without a certificate in this state, or to advertise, or put out any sign or card, or other device which might *indicate to the public* that he was an architect; *provided*, that nothing in this act shall *prevent* any person from making plans for his own buildings, nor furnishing plans or other data for buildings for other persons, provided the person so furnishing such plans or data shall fully inform the person for whom such plans or data are furnished, that he, the person furnishing such plans, is not a certified architect." (Stats. 1901, p. 644.)

[1] It is urged on behalf of the respondent that since he at no time represented himself to be an architect, but only an architectural engineer, he did not violate the statute above quoted. The idea seems to be that unless it appears that he violated every provision of the law in question, the mere fact that he transgressed one of its inhibitions is of no consequence. But, for any person to practice architecture in this state without a certificate is made a misdemeanor, and this regardless of whether or not he may also have held himself out to the public or to any person as an architect. [2] Under this statute there is but one way in which a person who has no certificate can legally render

such architectural services as were to be performed by respondent. Such person can "inform the person for whom such plans or data are furnished, that he, the person furnishing such plans, is not a certified architect." Therefore, if it be shown that the respondent practiced architecture, the burden is clearly upon him to prove that he brought himself within the exception just quoted by giving the appellant the required information. It is not contended that the respondent did this. Under such circumstances the task of the court is a simple one. **[3]** It is merely to decide whether or not the work contracted to be performed constituted practicing architecture. The rule which brings one within the classification of "architect" has been declared in various jurisdictions. In every instance where the term has arisen for interpretation, so far as we are able to ascertain, it has been held that one who makes plans and specifications for a building, and superintends its construction, is an "architect." In fact, the rule most commonly applied does not embrace the duty of supervision. (*Wilson & Edwards* v. *City Council of Greenville,* 65 S. C. 426 [43 S. E. 966]; *Turner* v. *Haar,* 114 Mo. 335 [21 S. W. 737]; *People* v. *Lowers,* 251 Ill. 527 [36 L. R. A. (N. S.) 1203, 96 N. E. 346]; *Young* v. *Bohn,* 141 Fed. 471; *Louisiana Molasses Co.* v. *La Sassier,* 52 La. Ann. 2070 [28 South. 217].) In *Bacigalupi* v. *Phoenix Bldg. & Constr. Co.,* 14 Cal. App. 632 [112 Pac. 892], it was held that although a person who prepared the plans and specifications was not a professional architect, but was a contractor and builder, yet, having performed such services, he was in that instance the architect. Clearly, the services contracted to be rendered by Payne were those of an architect.

**[4]** But respondent attempts to avoid the effect of this upon the theory that although he was the contracting party, prepared the plans and specifications, and agreed to supervise the construction, the contract was legal because he was in reality not the principal architect. However, the latter was not a party to the contract. In *Wedgewood* v. *Jorgens,* 190 Mich. 620 [157 N. W. 360], a city ordinance was involved which embodied provisions similar to those contained in the statute here under consideration. It was there said: "An architect, as defined by the ordinance, employs an unlicensed architect to prepare plans and specifications for one

of his clients.  Does the rule apply in such a case?  We think it does.  Plaintiff must have known that, as a builder, contractor, and overseer of construction, he was an architect within the meaning of the ordinance.  He knew that he had no license, and he admits that he knew that Krieger, the architect who actually prepared the plans, had no license. Whether plaintiff be regarded as an unlicensed architect, or whether he be regarded as a mere contractor and builder, who knowingly employed an unlicensed architect, to do the work, he is barred under the rule from recovering on the contract.''

The act here in controversy forbids the practice of architecture by an unlicensed person, and makes it a misdemeanor, although it does not *prevent* him from furnishing plans or data if he shall first have fully informed the person for whom they are intended that he has not been certified. This latter duty the respondent did not observe.

It has frequently been held that a statute or ordinance requiring the payment of a license and procurement of a certificate to perform the services of an insurance agent, attorney, contractor and builder, freight solicitor, insurance broker, peddler, architect, plumber, real estate agent, or stock breeder, is not to be construed as a revenue law alone, but as a police measure, for the protection of the public, and that a contract of an unlicensed person for the furnishing of such services will not be upheld.  (*Pride* v. *Commercial Union Ins. Co.*, 9 Ala. App. 334 [63 South. 803]; *Hittson* v. *Browne*, 3 Colo. 304; *Zimmerman* v. *Brown*, 30 Idaho, 640 [166 Pac. 924]; *Hughes* v. *Dougherty*, 62 Ill. App. 464; *Draper* v. *Miller*, 92 Kan. 275 [140 Pac. 890]; *Harding* v. *Hager*, 60 Me. 340; *Goldsmith* v. *Mfrs. Liab. Ins. Co.*, 132 Md. 283 [103 Atl. 627]; *Stewartson* v. *Lothrop*, 78 Mass. (12 Gray) 52; *Wedgewood* v. *Jorgens*, 190 Mich. 620 [157 N. W. 360]; *McIver* v. *Clarke*, 69 Miss. 408 [10 South. 581]; *Johnston* v. *Dahlgren*, 166 N. Y. 354 [59 N. E. 897]; *Johnson* v. *Hulings*, 103 Pa. 498 [49 Am. Rep. 131].) In *Levinson* v. *Boas*, 150 Cal. 185 [11 Ann. Cas. 661, 12 L. R. A. (N. S.) 575, 88 Pac. 825], our own supreme court said: ''It is to be noticed that every case from every court recognizes that when a statute has been made for the protection of the public, a contract in violation of its provisions is void.''

We conclude that respondent practiced architecture in contravention of the provisions of the act regulating the practice of architecture, and that therefore the contract upon which recovery is sought was illegal and void.

The sufficiency of the pleadings and of the evidence adduced upon the trial are questioned, but from the conclusion reached herein it becomes unnecessary to consider them.

The appeal from the order denying the motion for a new trial is dismissed.    The judgment is reversed.

Finlayson, P. J., and Works, J., concurred.