[Jemison *et al.* v. Birmingham & Atlantic Railroad Co.]

ances was as testified to by Gamble, the father—the insolvent debtor.

The decree of the court below must be affirmed.

# Jemison *et al. v.* Birmingham & Atlantic Railroad Co.

## *Action upon Warehouse Receipts.*

1. *Bills of lading; give no right of action when given for property not actually received.*—In an action by a railroad company against a warehouseman, seeking to recover for the breach of a contract, in failing to deliver cotton or to pay on account of shortages in delivery, where it is shown that the consideration for defendant's alleged promise to deliver the cotton or to pay on account of shortages in delivery was the plaintiff's promise to issue bills of lading for cotton in advance of its actual receipt, there can not be a recovery; it being necessary to enable the plaintiff to recover to prove the performance on its part of an illegal act, (Code, § 2219).

2. *Warehouse receipts; action thereon must allege transfer of receipt by indorsement.*—In an action by the assignee of a warehouse receipt against a warehouseman, a complaint which does not aver the mode of the alleged transfer of the warehouse receipt, showing that it was by indorsement, (Code, § 876), is insufficient and subject to demurrer.

APPEAL from the City Court of Talladega.

Tried before the Hon. G. K. MILLER.

This action was brought by the Birmingham & Atlantic Railroad Company against R. M. Jemison and S. W. Beavers, individually and as partners, doing business under the firm name and style of Beavers & Jemison. The complaint contained two counts, which, as amended, were as follows: "First. The plaintiff claims of the defendants the sum of, to-wit, seventy dollars damages for the breach of a covenant and agreement entered into by them on, to-wit, the first day of November, 1897,

which was as follows, to-wit: The said plaintiff railroad company agreed to issue bills of lading to all holders of warehouse receipts from the defendants, who were warehousemen conducting a warehouse in the city of Talladega, without requiring the holders of such warehouse receipts to actually deliver the cotton, or the defendants to deliver the cotton into their actual possession, but to give their warehouse receipts full credit as if the cotton were actually delivered. The defendants in consideration of this agreement on the part of the plaintiff, agreed that in case such bills of lading or any bill of lading was issued in this manner, and when the cotton was demanded, if there should be a deficiency from any cause, then defendants would supply the deficiency, either in cotton or by paying the plaintiff such damage or loss as they might incur by issuing the bill of lading upon their warehouse receipts. And the plaintiff avers that it issued a bill of lading to Stringer & Hicks upon certain warehouse receipts of the defendants and upon demanding the cotton for shipment there was a deficiency of two bales of cotton, marked 'T. S. A. 39 p. 48 & C. B. T. 23 p. 243,' and weighing, to-wit, 518 and 549 pounds, respectively. That the same has never been delivered to the said plaintiff nor has the said deficiency been made good in accordance with the agreement of the defendants, nor have they paid the value thereof; and the defendant avers that by reason of the facts above alleged, the said bill of lading issued to said Stringer & Hicks, being transferred and assigned for value to Sanders, Swan & Co., without notice, that the cotton was not shipped on account of defendant's action as aforesaid, whereby the plaintiff became liable to the said Sanders, Swan & Co. to the damage of the said plaintiff as aforesaid, hence this suit.

"Second. The plaintiff claims of the defendant the other and further sum of seventy dollars, for that the defendant, while operating a warehouse in Talladega for the storage of cotton during the year 1897, received two bales of cotton from Z. A. Laney and Dallas Johnson, said cotton being marked 'T. S. A. 39 P. 48 and C. B. T. 23 P. 243,' and weighing, to-wit, 518 and 549 pounds,

respectively; that afterwards said warehouse receipts were transferred for value to the plaintiff and said plaintiff, although it has made demand upon defendants on, to-wit, November 11, 1897, for said cotton, has never received the same, although they contracted and agreed so to do, to.the damage of the plaintiff in the sum of seventy dollars, hence this suit."

The defendants demurred to the entire complaint on the ground that there was an improper joinder of counts, in that the first count was an action *ex contractu* and the second *ex delicto.* To the first count of the complaint the defendant demurred upon several grounds, which were substantially as follows: 1. It is not alleged that there was any valuable consideration for the alleged promise of the defendants to make up the deficiency of cotton. 2. The defendants, by reason of the matters and things alleged in said count, did not owe any duty to the plaintiff to make delivery of the said cotton to it. 3. It is not alleged that defendants ever had such cotton in their possession. 4. It appears from the allegations of fact contained in said count that if any right of action exists on account of the matters and things therein alleged, such right of action is in the owners of the cotton and not in the plaintiff. 5. It appears from the allegations of fact in said count that the plaintiff never acquired possession of the cotton as a common carrier, assumed no binding obligation to the owners of the cotton or the holders of the warehouse receipts, and that any agreement or promise the defendants made to it, as alleged in that count of the complaint, did not give the plaintiff the right to recover. 6. It appears that the plaintiff violated the law in issuing the bill of lading, and cannot recover. 7. The alleged agreement between the plaintiff and the defendant was against public policy and void. 8. It is not alleged in said amended count that the bill of lading was transferred by indorsement from Stringer & Hicks to Sanders, Swan & Co. 9. It is not alleged in said amended count that the warehouse receipts were transferred to the plaintiff.

To the second count of the complaint the defendants

demurred upon the following grounds: "1. It is not alleged that said warehouse receipts were transferred by the owner thereof. 2. It is not alleged how said warehouse receipts were transferred to plaintiff. 3. It is not alleged or shown that title to said cotton was acquired by the plaintiff and after such title was acquired demand made therefor of the defendants by the plaintiff before this suit was instituted." These demurrers were overruled, to which ruling the defendant duly excepted.

The rulings upon the demurrers to the counts being the only rulings reviewed on the present appeal, it is unnecessary to set out in detail the other facts pertaining to the case. '

There was judgment in favor of the plaintiff, from which the defendants appeal, and assign as error the several rulings of the trial court, to which exceptions were reserved.

W. B. CASTLEBERRY and BROWNE & DRYER, for appellant.—The warehouse receipts were not indorsed, either to the consignors or to plaintiff. Without indorsement by the person to whom issued, defendants were prohibited from delivering the cotton. Not being bound to deliver to plaintiff, failure to do so could not create a basis of action.—Code of 1896, §§ 4221 and 4222; *Lehman, Durr & Co. v. Pritchett*, 84 Ala. 512; *L. & N. R. R. Co. v. Barkhouse*, 100 Ala. 543. The obligation to deliver only to the person having title to the bills of lading is imposed by law on the warehouseman. Any custom of a particular warehouseman, or of warehousemen generally, at Talladega to make delivery to the carrier, merely in possession of the warehouse receipt, was a bad custom; and, consequently, not binding upon defendants.—*L. & N. R. R. Co. v. Barkhouse, supra.*

The plaintiff issued the bills of lading without having received the cotton. This is the subject of its grief. It claims it got hurt by doing so and asks the courts in this action to cure such injury. It shows no real injury; but suppose it had suffered by paying the holder of the bills of lading the value of the cotton. By doing so it would

[Jemison *et al.* v. Birmingham & Atlantic Railroad Co.]

only pay the penalty of violating an express provision. of law.—Code of 1896, § 4219. Inasmuch as such injury results alone from a violation by the plaintiff of the express commands of the statute, it can form no lawful basis of recovery against another. Bills of lading are not negotiable instruments. Before receipt of the articles which they purport to cover, they perform the office merely of receipts, and like all receipts may be explained by parol testimony. The object of the statute is merely to punish the company or person issuing them for *neglect* or *inattention* to *duty.* It had no other purpose. Can the punishment it inflicts arm the guilty with a right of action, the sole basis of which is its own violation of law and public policy?—*Jasper Trust Co. v. K. C. M. & B. R. R. Co.,* 99 Ala. 422. Without such statute plaintiff would not have been liable to anyone, even an innocent transferee, upon a negotiable bill of lading issued without having first received the cotton.—*St. Louis, etc., R. R. Co. v. Ins. Co.,* 139 U. S. 223; *Mo. Pac. R. R. Co. v. McFadden,* 154 U. S. 155; *Jasper Trust Co. v. K. C. etc., R. R. Co., supra.*

KNOX & BOWIE, *contra.*—There is no misjoinder in this complaint, both being *ex contractu.*—*Davis & Son. v. Hurt,* 114 Ala. 146; Story on Bailments, §§ 191, 269. The transfer of warehouse receipts by delivery was sufficient transfer for the plaintiff to maintain an action on the same.—*Ala. State Bank v. Barnes,* 82 Ala. 607; *Baker v. Troy Com. Co.,* 114 Ala. 415; *Allen, Bethune & Co. v. Maury & Co.,* 66 Ala. 10.

SHARPE, J.—The agreement declared on in the first count of the complaint is violative of our statute law and is therefore void. Section 4219 of the Code expressly prohibits the issuance of bills of lading before actual receipt of the goods by the carrier. For so doing the carrier is, by a separate section (4223), made liable for resulting damages to any person who may be thereby injured. The provision is intended for the protection of the public as against the deceptious use which might be made of false bills of lading in misleading persons deal-

[Jemison *et al.* v. Birmingham & Atlantic Railroad Co.]

ing with the holder into the belief that the goods are in fact in the carrier's possession. Its intent and prohibitive force is indicated by the title of the act of February 28, 1881, in which the Code provision originated. See "An act to prevent the issue of false receipts and to punish the fraudulent transfer of property by warehousemen, wharfingers and others," Acts 1880-81, p. 133. By the act as first passed its violation was made punishable by fine and imprisonment in the penitentiary and by subjecting the offender for liability for damages to any person injured by the carrier's transgression. As modified and adopted into the Code, the criminal feature is omitted, but the civil liability is retained. In *Jasper Trust Co. v. K. C. M. & B. R. R. Co.* 99 Ala. 416, the clause imposing the civil liability was construed as punitive and intended "to punish and prevent the giving of bills of lading when the property or thing was not in fact received for transportation." It is not necessary that a prohibited evil should be made criminal or even subject to a penalty in order to vitiate a contract made in furtherance of the evil. The law will not allow a right to spring from its own deliberate violation.—*Moog v. Hannon,* 93 Ala. 503; *Shippey v. Eastwood,* 9 Ala. 200; *McGehee v. Lindsay,* 6 Ala. 16. "Where the only road to recovery is by way of an illegal contract, the court will not assist the parties to the contract in traveling it."—*W. U. Tel. Co. v. Yopst,* 3 L. R. A. (Ind.), 244.

It is immaterial that performance on the defendant's part does not involve illegality. To be enforceable the agreement must be mutually binding. The only consideration for the defendant's alleged promise to deliver cotton or to pay on account of shortages in delivery, was the plaintiff's promise to issue the bills of lading for cotton in advance of its actual receipt. Recovery cannot be had when, to show the defendant's breach of the agreement sued on, the plaintiff is compelled to prove performance of an illegal act.—*Walker v. Gregory,* 36 Ala. 100; *Gunter v. Leckey,* 30 Ala. 590; *Wood v. Armstrong,* 54 Ala. 150; *The State for use, etc. v. Metcalf,* 75 Ala. 42; *McGehee v. Lindsay, supra.*

As a declaration on the contract of bailment, the sec-

[Shannon; Admr. v. Jefferson County. and Jefferson County. v. Shannon, Admr.]

'ond count is insufficient, if for no other reason than because of its silence as to the mode of the alleged transfer of the warehouse receipt. To authorize an action in the name of a transferee of a contract for the performance of an act or duty, the transfer must be by indorsement.—Code, § 876. This statute has several times been construed as applicable to warehouse receipts.— *Ala. State Bank v. Barnes,* 82 Ala. 607; *Allen, Bethune & Co. v. Maury & Co.,* 66 Ala. 10; *Lehman, Durr & Co. v. Marshall,* 47 Ala. 362.

The count is also defective in not averring a refusal on the part of the defendant to deliver the cotton. The plaintiff does not claim to have stated an action in tort, nor has it done so. No breach of duty, legal or contractual is averred in the second count, which should have been sustained.

The judgment will be reversed and the cause remanded.