# Louisville & Nashville R. R. Co. *v.* National Park Bank of New York.

## *Assumpsit.*

(Decided May 12, 1914. Rehearing denied June 18, 1914. 65 South. 1003.)

1. *Conspiracy; Civil Action; Damages.*—The gist of an action for conspiracy is the damage and not the conspiracy, and the damage must have been the natural and proximate consequences of the acts of the conspirators; until something has been done or accomplished in the pursuance of the conspiracy it is the mere unfulfilled intention of several persons to commit a wrong, and not actionable.

**110**      **SUPREME COURT**      [Vol.

[Louisville & Nashville R. R. Co. v. National Park Bank of New York.]

2. *Pleadings; Complaint; Allegation; Conclusion.*—Where the facts set out in a complaint contradict the general conclusion, in determining the sufficiency of the complaint the conclusion must yield to the facts alleged.

3. *Carriers; False Bill of Lading; Complaint.*—Where the action was by the buyer of a bill of lading against the carrier purporting to have issued it, for the damages proximately resulting from a conspiracy between the alleged shipper and the carrier's agent, a complaint alleging that such bill of lading was spurious, that the agent of the carrier in entering into the conspiracy was acting within the scope of his employment, but which does not allege that the things conspired to be done were within the scope of his employment, does not state a cause of action against the carrier either at common law, or under the provisions of section 6136, Code 1907.

4. *Same; Liability to Purchaser.*—Where the purchaser of a spurious bill of lading sues the carrier purporting to have issued it, and in his complaint simply sets up a conspiracy between the alleged shipper and agent of the carrier to do certain things, the issuance of the bill of lading by the shipper and the purchaser thereof by plaintiff as an innocent purchaser, the complaint cannot be sustained on the theory of a system of business in which the issuance and sale of a spurious bill of lading constituted one item, and the issuance of a genuine bill on the delivery of the goods on the forged bill another item, and the delivery or the procuring of the delivery of the goods on the forged bill, another item, and all necessary to carry out the system causing the loss.

5. *Same; Authority of Agents; Issuance of Bill of Lading.*—An agent of a carrier has no authority to issue a bill of lading for goods before they are received for shipment, and the carrier is not responsible for the unauthorized acts of an agent in issuing a bill of lading before receiving the goods.

6. *Same.*—The provisions of section 6136, Code 1907, do not make a carrier liable for the act of an agent in issuing a bill of lading before receiving the goods, where the agent was not authorized to issue bills of lading at all, and to make a carrier liable it must appear that a bill of lading was issued or authorized by an agent charged with the duty of issuing such document.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

Action by the National Park Bank of New York against the Louisville & Nashville Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The following is amended count 5: Plaintiff claims of defendant the other and further sum of $150,000 damages suffered by it as a proximate result of a wrongful conspiracy entered into, to wit, the year 1905, by and

between Knight, Yancey & Co., a partnership, doing business at Decatur, Ala., and the defendant Louisville & Nashville Railroad Company, which conspiracy was as follows: Knight, Yancey & Co. were engaged in the business, among other things, of buying cotton, and of shipping it to various importers in Europe. Such export business is ordinarily and legitimately carried on, so far as making the payments for cotton is concerned, by the seller drawing drafts on the purchaser for the price of the cotton, and to these drafts attaching bills of lading issued by carriers to the shipper's order for cotton, which drafts with such bills of lading so attached are discounted by the shippers to banks. Such practices prevailed at all the times referred to herein. Defendant was and is a common carrier, and was and is engaged by itself, and in connection with other carriers, in the transportation of cotton from points on its line and railroad to various European ports. Knight, Yancey & Co., and defendant through its agent John A. Bywater, or other agents of it, whose names are to plaintiff unknown, all of whom were therein acting within the line and scope of their employment, in, to wit, the year 1905, wrongfully conspired that thereafter said Knight, Yancey & Co. would make up and utter false and spurious documents purporting to be defendant's bill of lading for cotton shipped by them over defendant's railroad, and the same use and dispose of it in the conduct of their cotton exporting business as if they were defendant's genuine bills of lading issued for cotton received by it; and defendant would through the influence of its business relations with its connecting carriers aid and assist in causing delivery to be made by such false and spurious bills of lading of any cotton, which said Knight, Yancey & Co. might subsequently to the issue of such false and spurious bills of lading ship

[Louisville & Nashville R. R. Co. v. National Park Bank of New York.]

over defendant's railroad and connections, marked and consigned in substantial conformity with the purported marks and consignment of the cotton purported to be shipped under such false and spurious documents, and pursuant to and as a part of such conspiracy the said Knight, Yancey & Co., between, to wit, April 7, 1910, and April 30, 1910, made up and issued false and spurious documents purporting to be defendant's bill of lading calling for the carriage by defendant and connecting carriers of, to wit, 1,950 bales of cotton from points in Alabama to Liverpoor, England, shipped by Knight, Yancey & Co. to their own order; and plaintiff says that said Knight, Yancey & Co. attached said false document to negotiable drafts drawn by them on drawees in Liverpool, England, for the face amount of $150,000, and the same discounted or caused to be discounted with plaintiff which was and is a bank doing business in New York City, to wit, the sum of $150,000. And plaintiff says that it discounted said drafts in the usual course of business, and in good faith believing that the documents thereto attached were defendant's genuine bills of lading, and plaintiff says that drafts and said bills of lading were wholly worthless, and that the said sum paid by it for said draft with said bills of lading attached has been wholly lost by it, and that said draft and bills of lading attached are its property.

·Gregory L. Smith, and Eyster & Eyster, for appellant. A master is not liable for any act of the agent done outside the line and scope of his authority or employment.—*Steele v. May, et al.,* 135 Ala. 488; *Hardeman v. Williams,* 150 Ala. 418. No cause of action arises out of the act of conspiring, but only out of acts done pursuant to a conspiracy.—*Schwab v. Mabley,* 47 Mich. 572; *Hutchins v. Hutchins,* 7 Hill 104; *Commercial*

*Union Ass. Co. v. Shoemaker,* 88 N. W. 156; *City of Boston v. Simmons,* 23 N. E. 210; *M'Henry v. Sneer,* 10 N. W. 234; *Taylor v. Bidwell,* 4 Pacific 491; *Herron v. Hughes,* 25 Cal. 561; Hilliard on Torts, vol. I, page 37; Cooley on Torts, page 142; 8 Cyc. 645; *Hundley v. Louisville, etc., R. R. Co.,* 48 S. W. 429; *Brinkley v. Platt,* 40 Md. 529; *Bowen v. Matheson,* 14 Allen 499; *Hauser v. Tate,* 85 N. C. 81. The civil effect of a conspiracy is to extend the right of action for the tort committed under it, beyond the person actually committing it, to all persons to the conspiracy.—*Randall v. Hazelton,* 12 Allen 414; *Van Horn v. Van Horn,* 20 Atl. 485; *Robinson v. Parks,* 24 Atl. 413; *Lee v. Taylor,* 11 N. Y. Sup. 132; 8 Cyc. 647; Cooley on Torts, page 144; *West Va. Trans. Co. v. Standard Oil Co.,* 40 S. E. 592; *Kimball v. Harmon,* 34 Md. 401; *Garing v. Fraser,* 76 Me. 37; *Brinkley v. Platt,* 40 Md. 529; *Hornblower v. Crandall,* 78 Mo. 581; *Breedlove v. Bundy,* 96 Ind. 319; *Hunt v. Simmonds,* 19 Mo. 583; *Western U. Tel. Co. v. Sledge,* 153 Ala. 291; *Western U. Tel. Co. v. Howle,* 156 Ala. 332. The master is not liable for an act done by a third person pursuant to a conspiracy with a servant, where the only act done was not within the scope or line of the servant's employment.—*West Va. Trans. Co. v. Standard Oil Co.,* 40 S. E. 593; *Zinc Carbonate Co. v. First National Bank,* 79 N. W. 231. The master is not liable for the acts of a third person acting in the place of the servant, unless the act done is one within the line of the servant's employment, and is done in the prosecution of the master's business.—*Hill v. Sheehan,* 20 N. Y. Sup. 529. It is not sufficient that the act was done while prosecuting the master's business, but must have been done in furtherance thereof and as incidental to the duties entrusted to him.—*Steele v. May, Buttrey & Cooney,* 135 Ala. 488; *Hardeman v. Williams,* 150 Ala.

418. If, in entering into the conspiracy, the agent did no act within the line or scope of his employment, then he bound himself individually, but he did not bind the defendant.—*King v. Livingston Mfg. Co.,* 60 South. 144. An agent of a railroad company cannot, as a matter of law, be acting within the line or scope of his employment in conspiring that another shall forge bills of lading for which no property has been delivered to the carrier for transportation.—*Jemison v. B. & A. R. R. Co.,* 125 Ala. 378; Hutchinson on Carriers, sections 160 and 161; *Friedlander v. Texas & Pac. R. R. Co.,* 130 U. S. 416; *Robinson v. M. & C. R. R. Co.,* 9 Fed. 139; *Jasper Trust Co. v. K. C. M. & B. R. R. Co.,* 99 Ala. 420; *Ala. Grt. Sou. R. R. Co. v. Commonwealth, etc.,* 146 Ala. 388. The delivery in Europe of cotton shipped over defendant's line and connecting carriers was no part of the defendant's business, unless there was some special contract or relation or partnership or agency between the carriers.—*Southern Express Co. v. Saks,* 160 Ala. 624. When a complaint alleges a conclusion, followed by a statement of facts upon which the conclusion is based, the facts alleged must support the conclusion, or the complaint will be subject to demurrer.—*B'ham Ry., L. & P. Co. v. Weathers,* 164 Ala. 23; *B'ham Ry., L. & P. Co. v. Jordan,* 170 Ala. 534; *Merrill v. Sheffield,* 169 Ala. 251; *Selma Street & Suburban Ry. Co. v. Campbell,* 158 Ala. 445. A complaint that does not state a cause of action will not support a judgment.—*L. & N. R. R. Co. v. Williams,* 113 Ala. 402; *Trott v. B'ham R. L. & P. Co.,* 144 Ala. 383. When the complaint does not state a cause of action, the defendant is entitled to a verdict, regardless of what the evidence may be.—*Scarbrough v. Rowan,* 125 Ala. 511. Where plaintiff does not make out a case, defendant is entitled to have all of the evidence excluded from the jury.—*Talladega Ins. Co. v.*

*Peacock,* 67 Ala. 262; *Pritchard v. Sweeney,* 109 Ala. 651; *Gulf City Con. Co. v. L. & N. R. R. Co.,* 121 Ala. 625; *Brennfleck v. M. & O. R. R. Co.,* in Mss. No liability was shown under the statutory law of Alabama.—Code of 1907, section 6136; *Ala. Grt. Sou. R. R. Co. v. Commonwealth, etc.,* 146 Ala. 388. The delivery in Europe to holders of forged bills of lading, of cotton shipped to meet them was a lawful and proper act.— *The Idaho,* 93 U. S. 578; *Lovell v. Newman,* 188 Fed. 534; *Lovell v. Newman,* 192 Fed. 753. A charge that gives undue prominence to any particular facts is erroneous.—*Jones v. State,* 174 Ala. 85. One who has authority to do an act in a lawful manner has no implied authority to do it in an unlawful manner.—*Russell v. State,* 71 Ala. 350. An agent who is without authority to do an act cannot ratify that act when done by another.—31 Cyc. 1248, 1250; *Cook v. Tullis,* 18 Wallace 332; *Gambill v. Fuqua,* 148 Ala. 456; *Morton v. Bradley,* 30 Ala. 683; *Chapman v. Lee,* 47 Ala. 143. When one forges a bill of lading and then ships cotton intended to be delivered thereunder, the holder of the forged bill of lading is entitled to receive such cotton.—*The Idaho,* 93 U. S. 578; *Lovell v. Newman,* 188 Fed. 534; *Lovell v. Newman,* 192 Fed. 753; *Cent. of Ga. R. R. Co. v. Chicago Varnish Co.,* 169 Ala. 290.

PERCY, BENNERS & BURR, CALLAHAN & HARRIS, HARRINGTON, BINGHAM & ENGLAR and LOUIS F. DOYLE, for appellee. As to the law of conspiracy, see 3 Enc. of Evid. 408; *Tanner v. State,* 92 Ala. 1; *Ferguson v. State,* 134 Ala. 63; 3 Greenl. Evid. 93; *Martin v. State,* 89 Ala. 115; *Phoenix I. Co. v. Moog,* 78 Ala. 284; *Mason v. State,* 42 Ala. 532; *Scott v. State,* 30 Ala. 503; *Crittenden v. State,* 134 Ala. 145. The following cases show a common state of fact along broad lines, and the applications

of the same principles of law will necessarily follow. —*Rogers v. V. S. & P. R. R. Co.,* 114 C. C. A. 85; Same Case, 225 U. S. 713; 56 Fed. 369; 195 Mo. 195; 77 C. C. A. 499; 66 C. C. A. 375; *W. U. T. Co. v. F. & M. Bank,* 62 South. 250; 44 Pac. 192; 113 C. C. A. 124; 48 L. R. A. 211; 198 Fed. 898. When in the course of his employment, an agent acquires knowledge or receives notice of any fact material to the business in which he is employed, the principal is deemed to have notice of such fact except where the agent acquires the knowledge while acting for himself in his own interest and adverse to the interest of his principal.—8 L. R. A. (N. S.) 883; 216 U. S. 504; 31 Cyc. 1587, 1594; 204 U. S. 272; 2 Thomp. on Corp. § 1655; Clark & Skyles on Agency, § 485; 199 U. S. 160. The conspiracy of Bywater was not to defraud his principal, but was directed against third persons.—2 Thomp. on Corp. § 1667 and cases cited; *First Nat. Bank v. Allen,* 100 Ala. 476; *Hall, et al v. Holley F. & M. Co.,* 56 South. 726; *Frenkel v. Hudson,* 82 Ala. 158. It was Bywater's duty to report to his superior.—31 C. C. A. 499; 2 Thomp. § 1647, and authorities supra.

ANDERSON, C. J.—Amended count 5 of the complaint, being the only one submitted to the jury, and which will be set out by the reporter, seeks to charge the defendant with liability for injury resulting to the plaintiff from the purchase by it of a certain bill of lading for 1,950 bales of cotton, purporting to have been issued by said defendant railroad company, but which was false and spurious, having been made up and uttered by Knight, Yancey & Co., resulting from a conspiracy entered into between said Knight, Yancey & Co. and defendant's agent Bywater, or other of defendant's agents whose names are unknown.

There are other averments, as to what the defendant's agents were to do, in pursuance and execution of the conspiracy, but the performance of which is not averred; and, if that feature as to the delivery of the cotton upon said spurious bill of lading had been complied with, we doubt the bringing of this suit.

The result is that the gravamen of the action, when sifted down to its final analysis, is that the plaintiff purchased a bill of lading purporting to have been issued by the defendant for cotton which was never delivered to the defendant, and that the said bill of lading was therefore worthless; that said bill of lading was issued by Knight, Yancey & Co. to themselves, in the name of the defendant and in pursuance of a conspiracy entered into between said Knight, Yancey & Co. and its agent John A. Bywater, or other agents of the defendant, all of whom were therein acting within the line and scope of their authority.

The complaint avers, in general terms, that the said Bywater and other agents were "therein"—that is, in entering into the conspiracy—acting within the line and scope of their employment, but does not charge that the things they conspired to do were within the scope of their employment. A charge that an agent entered into a conspiracy to do a wrong when acting within the scope of his employment falls far short of charging that the acts which he conspired to do were within the scope of his employment. In other words, this count 5, which must be construed more strongly against the pleader upon demurrer, simply charges that when Bywater, or the other agents, were acting within the scope of their employment, they entered into a conspiracy to do certain things; but it does not charge that the things done, or to be done, were within the scope of the employment of said agents.

"The general rule is that a conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action. The damage is the gist of the action, not the conspiracy; and, though the conspiracy may be said to be of itself a thing amiss, it must nevertheless, until something has been accomplished in pursuance of it, be looked upon as a mere unfulfilled intention of several to do mischief."—Cooley on Torts, § 143.

"Unless something is actually done by one or more of the conspirators pursuant to the scheme and in furtherance of the object which results in damage no civil action lies against any one. The gist of the action is the damage and not the conspiracy, and the damage must appear to have been the natural and proximate consequence of defendant's acts."—8 Cyc. p. 645, and cases cited.

The result is the proximate cause of plaintiff's damages, as disclosed by count 5, was the issuance of a false and spurious bill of lading by Knight, Yancey & Co., in the name of this defendant, and in pursuance of a conspiracy with Bywater, or other agents of the defendant who, as charged, were acting within the scope of their employment when entering into the said conspiracy. It is not charged that the thing conspired to be done or which was done, in pursuance of the conspiracy, was within the scope of the employment of said agents.

We therefore hold that if the averment of the conclusion would suffice, and if it stood alone, it does not charge that the act done was within the scope of the employment of the defendant's agents; but if such was the case, and the pleader, after stating the conclusion, goes further and sets out the facts and said facts show that there was no power in the agents the conclusion must yield to the facts set out.—*Birmingham R. R. v.*

*Jordan,* 170 Ala. 534, 54 South. 280; *Merrill v. Sheffield,* 169 Ala. 251, 53 South. 219; *Selma St. R. R. v. Campbell,* 158 Ala. 445, 48 South. 378.  Therefore, if it be admitted, but which is not the fact, that the general averment that the things therein referred to as being within the scope of the agent's employment related to the things to be done in furtherance of the conspiracy, then the facts as specifically set up would negative such an averment, under the common law, as it is well settled by the decisions of this and most of the courts of the country that an agent of a public carrier has no authority to issue a bill of lading for goods before the same are delivered for shipment and that the carrier is not responsible for such unauthorized acts of its agent.— Hutchinson on Carriers, 161; *Friedlander v. T. & P. R. R.,* 130 U. S. 416, 9 Sup. Ct. 570, 32 L. Ed. 991; *Jemison v. Birmingham & A. R. Co.,* 125 Ala. 378, 28 South. 51; *Jasper Co. v. K. C. M. & B. R. R. Co.,* 99 Ala. 416, 14 South. 546, 42 Am. St. Rep. 75.  The wrongful act alleged to have been done under the conspiracy, and to which the servant is alleged to have agreed, was the issuance by Knight, Yancey & Co. of documents purporting to be bills of lading of the Louisville & Nashville Railroad Company, without the company having received any property for transportation thereunder.  If the agents of the defendant would not have been acting within the line or scope of their employment had they themselves issued such a document, they would not, of course, have been acting within the line or scope of such employment in attempting to authorize, or in aiding others to do so.  Clearly, under the common law, the agents of the defendant could not issue spurious bills of lading so as to bind the principal.

It is true that section 6136 of the Code of 1907 was enacted to remove, to a great extent, the seeming hard-

ship of the common law, by protecting innocent people who deal with bills of lading issued by agents of carriers, whether genuine or not, upon the theory that the carrier and not the innocent person should suffer for the loss on a false bill of lading, when issued by one in its employment with authority to issue such documents. —*Jasper Co. v. K. C. M. & B. R. R.*, 99 Ala. 416, 14 South. 546, 42 Am. St. Rep. 75. The effect of this change, however, was not to make the carrier liable for bills of lading issued by one, though an agent, who had no authority to issue bills of lading. In other words, the prime, if not the sole, purpose of the enactment, was to make the act within the scope of the employment of an agent who was authorized to issue bills of lading, and to counteract the rule of the common law, that the issuance of a spurious bill of lading was not within the scope of the employment of an agent employed only to issue genuine ones.

It would therefore appear that under the law as changed by our statute, in order to fasten liability upon the carrier for the issuance of a false bill of lading, it must have been issued, or authorized, by an agent charged with the duty of issuing such documents; and that the law does not apply to agents who are not so charged or whose line of employment and duties in no wise pertains to the issuance of such documents. The complaint not having charged that the agents of the defendant were acting in the line or scope of their authority in assenting to the issuance of the bill of lading, or that the issuance of bills of lading, or the authorization of the issuance of same, was within the scope of employment of the agents who conspired with said Knight, Yancey & Co., failed to charge liability against the defendant under the statute as well as under the common law; and the trial court erred in not sustaining the defendant's

demurrer to amend count 5. Indeed, it is questionable if it states a cause of action.

We have dealt with this count of the complaint, upon the only theory upon which it could possibly be regarded as attempting a cause of action against this defendant, but have not been unmindful of the argument in appellee's briefs, as to the theory upon which it seeks a recovery. Indeed, counsel disclaim any reliance upon a right to recover under either the common law or the statute, for the issuance of a bill of lading by any agent of the company. They say: "In this case we deal, not with the issuance of a bill of lading in a simple transaction, but with the creation of a system of business in which the issuance and sale of the forged bill of lading was one item, the issuance of the genuine bill upon the delivery of the cotton on the forged bill was another item, the delivery or the procuring of the delivery of the cotton on the forged bill was another item, and all three were necessary cogs in the machinery which was used in carrying on this system of business, and which finally resulted in the loss, without fault on the part of this plaintiff and others, of large sums."

If this is the theory upon which plaintiff sought a recovery, whether sound and actionable or not, such a case is not presented by the only count of the complaint with which we can deal. Said count does not charge a series of acts, or a course of conduct, as being the cause of the plaintiff's injury or damage, and does not aver all three of the acts, which were "necessary cogs in the machinery." The complaint does not state or cover such a case as is stated or contended for in brief of counsel. As we view the complaint, it simply sets up a conspiracy to do certain things, and that a bill of lading was falsely issued by Knight, Yancey & Co., which plaintiff bought as an innocent purchaser. It does not charge that the

defendant did a series of acts or a single act in further-ance of the system contemplated by the conspiracy, or that a system or general course of conduct was the prox-imate cause of the plaintiff's damage. The gravamen of the complaint is the false issuance of one bill of lading by Knight, Yancey & Co., in pursuance of a conspiracy with some agent or agents of the defendant, who were not charged with duties in connection with the issuance of such bills of lading.

We agree with counsel that the facts as argued pre-sent a rather unique case, and show a series of colossal frauds upon the commercial world; but the complaint is not grounded upon the theory argued and contend-ed for in brief of appellee's counsel.

The judgment of the law and equity court is reversed, and the cause is remanded.

Reversed and remanded.

MAYFIELD, DE GRAFFENRIED, and GARDNER, JJ., con-cur.