Gerald J. SHOOK and Rose
M. Shook, Plaintiffs,

v.

ST. BEDE SCHOOL, et
al., Defendants.

No. Civ.A. 99–T–187–N.

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 17, 1999.

Timothy C. Halstrom, Montgomery, AL, for Plaintiffs.

David M. Wilson, Nicholas W. Woodfield, Janecky Newell, PC, Birmingham, AL, for Defendants.

### ORDER

MYRON H. THOMPSON, District Judge.

This lawsuit arises out of the decision by St. Bede School not to renew the annual employment contract of its principal, Gerald Shook. As one of two plaintiffs, Shook claims age discrimination, defamation, and conspiracies to discriminate and defame, against the following defendants: St. Bede School; the Catholic Archdiocese of Mobile; David J. Tokarz, Pastor of St. Bede the Venerable Catholic Church; Thomas L. Doyle, Vicar of the Department of Education; Oscar H. Lipscomb, Archbishop of the Department of Catholic Schools; Gwen Byrd, Superintendent of Schools; Eleanor McCormack, current principal of St. Bede School; and individually named members of the school council, including Mike Barranco, John Houston, Paula Roberts, Fran Smith, Cindi Staub, David Tyner, and Brett Wilkinson.[1]

Shook charges age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.A. §§ 621–634, against the School and the Archdiocese; conspiracy to violate his rights under the ADEA, against all of the individually named defendants; defamation, under Alabama state law, against Father Tokarz; and conspiracy to defame, under Alabama state law, against all of the individually named defendants.[2] Properly invoking this court's jurisdiction under 29 U.S.C.A. § 626 (ADEA) and 28 U.S.C.A. § 1367(a) (supplemental), Shook seeks compensatory and punitive damages, equitable relief, liquidated damages, and attorney's fees and costs. Shook's wife is the other plaintiff; she seeks damages for loss of consortium based on Shook's defamation and conspiracy-to-defame claims.

This lawsuit is now before the court on the defendants' motions for summary judgment, which, for the reasons discussed below, are granted in part and denied in part.

### I. FACTUAL BACKGROUND

In making its determination on summary judgment, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Accordingly, the facts, as gathered from the affidavits, deposition testimony, and other evidence submitted by the parties but viewed in the plaintiff's favor, are as follows.

Gerald Shook was 53 years old when he was hired in 1991 as principal of St. Bede School, a private Catholic school in Montgomery, Alabama. He was hired on a one-

---

1. Plaintiffs had also named school council members Thomas Dickson and Robert Reynolds as defendants, but on plaintiffs' motion, filed May 14, 1998, and upon order of the court filed May 27, 1999, they were dismissed from the suit.

2. The plaintiffs' complaint also alleged breach of employment contract and age discrimination in violation of Alabama's state equivalent to the ADEA, but these claims have since been abandoned. *See* Plaintiffs' Statement in Opposition to Defendants' Motion for Summary Judgment, filed May 27, 1999, at 7.

year contract which was renewed each successive year for six years. He signed his seventh and final contract with St. Bede in May 1997, and the contract was set to end in June of the following year. There is no evidence of any admonishment or disapproving evaluations during Shook's tenure at the School.

Nonetheless, some members of St. Bede's school council had decided that Shook's administration of the School had run its course. Council member Robert Reynolds first became aware of the dissatisfaction of others on the council when fellow council member Mike Barranco had lunch with him prior to the start of the 1997–98 school year and expressed his intent to remove Shook.[3] According to Reynolds, when Barranco realized that Reynolds would have no part in any effort to remove Shook, "[t]he discussions concerning Mr. Shook's removal as principal then took on a clandestine nature."[4] Father Tokarz, who was appointed as pastor of the St. Bede church (a position that includes supervising the St. Bede School) in 1997, was aware of the impending vote and convened a meeting between Gwen Byrd, Superintendent of Catholic Schools for the Mobile Archdiocese, Shook, and himself at which he gave Shook the opportunity to resign. Shook responded that he felt the school council's vote would be close but ultimately favorable to him.[5]

Before the February 3, 1998, meeting at which the council voted on renewing Shook's contract, rumors had circulated among parents of students that the council intended to vote against Shook's continued

service as principal.[6] The February 3 meeting of the school council was heavily attended by parents, the vast majority of whom spoke in favor of retaining Shook.[7] The parents' attempts to sway the council were unavailing, and the school council voted not to renew Shook's contract.

The council was resolutely silent on the reasons for its decision. According to Reynolds, the council told the parents that "the board's reasons had to be kept confidential in order to protect Mr. Shook."[8] According to one of the parents, Father Tokarz answered the question "What did Mr. Shook do to cause this problem?" by saying "that the causes are so serious that [Father Tokarz] was not at liberty to tell the parents."[9] In the absence of clear reasons, parents substituted rumors, among them that Shook had endangered the children, that he was a pedophile, that the School lacked discipline under his reign, and that he must have been guilty of some fraud or theft against the School.[10]

Shook, who was then just two months away from his sixtieth birthday, was replaced by Eleanor McCormack, eleven years and five months younger than he. Rumors continue to spread about Shook's tenure as principal: a seventh-grade teacher hired after Shook's termination told her class that Shook "had no discipline or control and that students were running wild,"[11] and Eleanor McCormack's son told a college professor (who is also a St. Bede parent) that Shook was so disorganized and so poor at disciplining children that "the quality of the school had fallen under Mr. Shook's administration."[12]

3. *See id.,* exhibit 3 (affidavit of Robert Reynolds).

4. *Id.*

5. *See* Defendants' Evidentiary Submission in Support of Motion for Summary Judgment, filed July 21, 1999, at 21.

6. *See* Plaintiffs' Statement in Opposition to Defendants' Motion for Summary Judgment, filed May 27, 1999, exhibit 3 (affidavit of Robert Reynolds); *id.* exhibit 5 (affidavit of Barry Stuman).

7. *Id.,* exhibit 5 (affidavit of Barry Stuman).

8. *Id.,* exhibit 3 (affidavit of Robert Reynolds).

9. *Id.,* exhibit 4 (affidavit of Patrick J. Demerath).

10. *Id.*

11. *See id.,* exhibit 9 (letter from Gerald Shook to Father Tokarz).

12. *Id.,* exhibit 10 (affidavit of Brooks Warren).

Shook's employment at the School ceased June 15, 1998, the date his last contract ended.

## II. DISCUSSION

Summary judgment can be granted only if, after viewing evidence and inferences in the nonmovant's favor, the court finds that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate that summary judgment is inappropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This shifting of the burdens of production and proof is governed by the substantive law of the dispute. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the movant and nonmovant's respective burdens vary whether the legal issues, to which the facts in question pertain, are ones for which the movant or nonmovant bears the burden of proof at trial).

### A. AGE DISCRIMINATION

██ As stated, Shook's ADEA claim is against only St. Bede School and the Archdiocese. To survive summary judgment, an ADEA plaintiff must demonstrate a genuine dispute of the material fact of discriminatory intent. That live dispute of intent can be shown three ways: through direct evidence of discriminatory motive; through a presumption of intent raised by the prima facie case of discrimination; and through statistical evidence of a pattern of discrimination. *See Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990). Absent any showing in the record of statistical pattern evidence, the relative burdens of production and proof shift as follows according to the kind of evidence proffered by the plaintiff to show discriminatory intent: if the plaintiff offers direct evidence, then the employer must prove by a preponderance of the evidence that the same employment decision would have been made regardless of discriminatory intent; if, instead, the plaintiff offers circumstantial evidence, the plaintiff must first establish a prima facie case of discrimination, and, then, if the plaintiff is successful, the employer must respond with legitimate, nondiscriminatory reasons for the adverse employment decision, which the plaintiff finally must discredit as pretextual. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1527–38 (11th Cir.1997) (surveying development of burden-shifting scheme in ADEA jurisprudence).

### 1. Direct Evidence

██ Shook argues that he has proffered direct evidence of discriminatory intent by introducing this statement of a St. Bede parent: "I saw Father Tokarz in passing and ask[ed] him specifically why Mr. Shook was being let go. Father responded 'for me not to worry it's just Gerry's old and set in his ways.'" [13] This statement is not, however, direct evidence of discriminatory motive. Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption. *See Earley,* 907 F.2d at 1081–82.[14] The description of Shook as "old and set in his ways" suggests little more than Father Tokarz's willingness to speak in cliches. The statement does not constitute evidence from which a trier of fact could conclude that Shook was fired

13. Response to Motion for Summary Judgment, filed August 23, 1999, exhibit B (affidavit of Edwin O. Waller).

14. In *Hearn v. General Elec. Co.,* 927 F.Supp. 1486, 1497–98 (M.D.Ala.1996) (Thompson, J.), this court expounded at length on the murkiness of the Eleventh Circuit's direct-evidence definition and, in addition, on the needlessness and implausibility of the distinction between direct and circumstantial evidence. Nevertheless, because this court is bound by this circuit's precedent, it will continue to draw the distinction.

because he was considered too old. Even if Father Tokarz made this statement in response to the parent's request for an explanation of Shook's termination, the first part of his statement—advising the parent "not to worry"—makes the description that follows not a statement of reasons but an evasive non-answer. In fact, the parent who had this colloquy with Father Tokarz adds, "At the time I felt I was just being blown off...." [15] This statement does not constitute evidence from which a trier of fact could reasonably conclude that age was a motivating factor in the School's decision not to renew Shook's contract.

### 2. Circumstantial Evidence

#### a. Prima Facie Case

■ The prima facie case of age discrimination derives from the *McDonnell Douglas* test (as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)) and, for purposes of this case, has the following elements: (1) the plaintiff is at least 40 years old; (2) the plaintiff was qualified for a specific condition or benefit of employment; (3) the plaintiff was denied the condition or benefit despite his qualifications; and (4) that condition or benefit was enjoyed by or given to someone younger than the plaintiff. *See* 29 U.S.C.A. §§ 623(a), 631(a); *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (clarifying that ADEA prima facie case does not require granting disputed job benefit to someone younger than 40, only someone younger than the plaintiff); *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13 ("The facts necessarily will vary in [employment discrimination] cases, and the specification ... of the prima facie proof required [for a particular theory of discrimination] is not necessarily applicable in every respect to differing factual situations."); *see also Walker v. Mortham*, 158 F.3d 1177 (11th Cir.1998) (eliminating relative qualifications as an element of the prima facie case); *Combs*, 106 F.3d at 1527–29 (applying *McDonnell Douglas* test to ADEA claims).

■ As the School and the Archdiocese themselves concede, Shook has established a prima facie case.[16] At the time the defendants opted not to renew the employment contract, Shook was 59 (almost 60) years old. Shook's qualifications for the job he had held for seven years did not evaporate in the time between his re-hiring the year before and the final decision not to renew his contract, and he was replaced by someone younger, namely Eleanor McCormack, who is 11 years and five months Shook's junior.

#### b. Legitimate, Nondiscriminatory Alternative Reasons

■ Because Shook has met the requirements of his prima facie case, the burden shifts to the School and the Archdiocese to proffer legitimate, nondiscriminatory reasons for the non-renewal of Shook's contract. To rebut the presumption of age discrimination thus raised by Shook's prima facie case, the defendants declare that Shook was not re-hired because "he had demonstrated an inadequate leadership skill while acting as principal of St. Bede's School."[17] They offer several specific examples of this perceived inadequacy: his response to a playground fight was "improper" and "evidenced a lack of understanding of the discipline policy and a lack of willingness to enforce the discipline policy"; his overrule of a teacher's decision to retain or promote a student "demonstrated a lack of propriety"; he "mishandled" an incident involving an asthmatic child who missed medication during School; he made "an unapproved/unauthorized promise of money to

---

**15.** Response to Motion for Summary Judgment, filed August 23, 1999, exhibit B (affidavit of Edwin O. Waller).

**16.** *See* Defendants' Memorandum Brief in Support of their Motion for Summary Judgment, filed July 21, 1999 (Doc. no. 38), at 11.

**17.** *Id.* at 4.

the PTC for playground equipment outside of the guidelines of the budgeting process"; he hired an individual "as the resource teacher and assistant principal without the position being budgeted for and without the specific prior approval of the school council"; he "mishandled" an incident involving a child struck in the head by a rock left on the playground; and he "was unacceptably weak with respect to issues concerning curriculum development for the school."[18] Neither the reason of inadequate leadership nor these specific examples of that inadequacy involve age or attributes unreasonably attributed to advanced age, and they suffice as legitimate, nondiscriminatory alternative reasons for the non-renewal of Shook's employment contract.

### c. Pretext

■ The burden thus shifts yet again to Shook to demonstrate that the proffered nondiscriminatory reason for the employment decision is pretextual. Shook is aided in this burden by the recent restatement of this "circuit's cautious treatment of purely subjective justifications for adverse employment decisions" in *Chapman v. AI Transport*, 180 F.3d 1244, 1250 (11th Cir.1999). *Chapman* stresses that, "while not precluding summary judgment in every instance, a proffer of purely subjective reasons for a termination ... leaves an employee without any objective criteria to point to in order to show competence and leaves the court without any objective, ascertainable criteria to evaluate." 180 F.3d at 1249 (citations omitted). Where both objective and subjective criteria are cited for an adverse employment decision, "the plaintiff's ability to call into question the credibility of the defendant's stated objective criteria ... is, at the summary judgment stage, sufficient to cast doubt on the defendant's subjective justifications as well." *Id.* at 1250. If "the employee has established a prima facie case and cast sufficient doubt on the credi-

bility of subjective explanations that are not susceptible to evidentiary support or capable of objective evaluation by this court, ... summary judgment is inappropriate." *Id.*

■ In this case, the School and the Archdiocese have offered purely subjective reasons—their general evaluation of Shook's leadership as inadequate or weak. Subjective interpretations color the specific examples offered in support of the general evaluation. Shook's seven-year history as principal of the St. Bede School has not been marred by any negative evaluations or corrective counseling from his supervisors, and this long term of service free of admonition or reprimand itself casts doubt on the defendants' subjective explanation. Further, Shook has offered alternative explanations for all of the specific examples of his supposedly inadequate leadership, and his explanations demonstrate awareness of and comportment with diocesan policy and considered decision-making (for example, the playground fight was resolved after extensive discussions with the parents of the children involved and the parties decided to combine at-home punishment with in-school suspension, and his overrule of a teacher's decision not to promote two students was in accord with archdiocese policy and was decided after extensive review of the facts).[19] By offering alternative interpretations of the specific examples, Shook has therefore underscored the doubt he has already raised about the purely subjective nondiscriminatory reasons proffered by the defendants.

Shook has thus carried his burden of showing the defendants' legitimate nondiscriminatory alternative reasons for the non-renewal of his contract to be pretextual. His ADEA claim against the School and the Archdiocese therefore survives summary judgment, and the defendants'

---

**18.** *Id.* at 4–5.

**19.** *See* Response to Motion for Summary Judgment, filed August 23, 1999 (Doc. no. 48), exhibit A (affidavit of Gerald J. Shook).

motion as to this count is accordingly denied.

## B. CONSPIRACY TO COMMIT AGE DISCRIMINATION

 Related to Shook's ADEA claim is his claim that the individually named defendants are liable for conspiracy to violate his rights under the ADEA. Notably, Shook cites no substantive legal basis to support this claim, and the ADEA itself has no provision for conspiracy. Liability for ADEA violations is instead expressly limited to employers; the employer in this case is the Archdiocese of Mobile and the St. Bede School, and liability accordingly will not extend to the individually-named defendants. *See Smith v. Lomax,* 45 F.3d 402, 403 n. 4 (11th Cir.1995). Shook cannot turn to the tort of conspiracy under Alabama state law to extend that liability—that is, to get around the ADEA's limitation of liability to employers—because the tort of conspiracy fails if liability is unavailable in the underlying tort which is the aim of the alleged conspiracy. *See Purcell Co., Inc. v. Spriggs Enterprises, Inc.,* 431 So.2d 515, 522 (Ala. 1983). The individually named defendants' motion for summary judgment will therefore be granted as to Shook's claim of conspiracy to violate the ADEA.

## C. DEFAMATION

Both Shook and his wife charge Father Tokarz with injuring Shook's reputation by slandering him. In one theory, the plaintiffs appear to argue that Father Tokarz was fully aware of the rumors circulating among parents about possible reasons for the non-renewal decision, that he chose to remain silent and not refute those rumors, and that this failure to refute the rumors constitutes slander. In another theory, the plaintiffs argue that the statements made by the various school officials—that Father Tokarz's refusal to offer reasons for the non-renewal of the contract was necessary to protect Shook, or that the reasons themselves were too serious to permit public disclosure—operated in the context of the school council meeting and

the community of teachers, students, and parents to impute moral turpitude to Shook.

 These arguments must be tested against the slander component of defamation jurisprudence. Slander is a false and defamatory oral communication of and concerning the plaintiff, communicated to a third person, that "subject[s] the plaintiff to disgrace, ridicule, odium, or contempt." *Anderton v. Gentry,* 577 So.2d 1261, 1263 (Ala.1991). If the defamatory statement "imputes to the plaintiff an indictable offense involving infamy or moral turpitude," then it constitutes slander per se and damage is implied by law. *Id.* If instead the statement is defamatory but does not impute an indictable offense of that ilk, then it constitutes slander per quod and is actionable only if the plaintiff pleads and proves special damages. *See id.* Special damages are the material harms that are the intended result or natural consequence of the slanderous statement, *see Harrison v. Burger,* 212 Ala. 670, 103 So. 842, 844 (1925), and the general rule is that they are limited to "material .loss capable of being measured in money," Restatement (2d) of Torts § 575, cmt. b, at 198.

 Neither of the proffered theories comports with this test. This court understands that an implication can be as venomous as an accusation, that a lacuna can be as expressive as a word. A discrete community of auditors may, at a certain time or place or occasion, interpret an otherwise innocuous gesture, statement, or silence to be an unequivocal expression of a specific charge. Still, there must be some certain link connecting the expressive behavior disputed to a charge of infamy and turpitude. Father Tokarz implied at best that Shook had done something wrong; the rumors that resulted from his grave insistence on confidentiality ranged from pedophilia to embezzlement to mere ineffectuality. There is no evidence from which a trier of fact can conclude that the defendant imputed to Shook a grossly im-

moral felony. The plaintiffs have not developed a case for slander per se.

 They have likewise failed to develop a case for slander per quod. Even if this court grants the plaintiffs the presumption that the defendant said anything at all that "subject[s] [Shook] to disgrace, ridicule, odium, or contempt," *Anderton*, 577 So.2d at 1263, the plaintiffs have neither pled nor offered proof of special damages resulting directly from the allegedly slanderous communication. Shook's claim of emotional distress and anguish does not suffice, nor does his wife's additional claim of loss of conjugal relations. *See generally* Restatement (2d) of Torts § 575, at 199 cmt. c ("Under the traditional rule, the emotional distress caused to the plaintiff by his knowledge that he has been defamed is not special harm; and this is true although the distress results in a serious illness."). These "general damages" will not sustain an action for slander per quod.

The plaintiffs have failed to offer any proof from which a trier of fact could reasonably conclude that the communications of Father Tokarz constitute slander. Summary judgment is therefore granted on the defamation claim.

### D. CONSPIRACY TO DEFAME

 Finally, Shook and his wife charge all the individually-named defendants with conspiracy to defame. Well established as a substantive tort in Alabama, the essence of the tort of conspiracy is not the alleged conspiratorial agreement but the perpetration of some tortious wrong or injury. *See Purcell*, 431 So.2d at 522. "A conspiracy is defined as the combination of two or more persons to do (a) something that is unlawful, oppressive, or immoral; or (b) something that is not unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means; or (c) something that is unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means." *Barber v. Stephenson*, 260 Ala. 151, 69 So.2d 251 (1953). If the theory is a conspiracy to reach an illegal end, the illegal end itself must be actionable in theory. *Purcell*, 431 So.2d at 522. It is possible, though, to claim a conspiracy to reach an illegal end that has not yet been achieved; if the plaintiff can show not the completed conspiracy but an overt act in furtherance of that conspiracy, liability may still attach if that overt act has caused actual damage to the plaintiff. *See Louisville & N.R. Co. v. National Park Bank of New York*, 188 Ala. 109, 65 So. 1003, 1004 (1914).

 The *Purcell* problem precludes liability in this case: because the underlying tort of slander is, as discussed above, not actionable in the present case, the tort of conspiracy to slander is subsequently not actionable. Even if the plaintiffs were to argue that the disputed communications were only overt acts in furtherance of a larger scheme to slander Shook's good name, the plaintiffs would still not succeed because they have failed to develop proof from which a trier of fact could conclude that there was indeed such a conspiracy or that the plaintiffs suffered special damages resulting from it. Summary judgment must therefore be granted the defendants on this count.

### III. CONCLUSION

For the reasons stated above, the court finds that Shook has developed his ADEA claim but he and his wife have failed to develop the claims of defamation, conspiracy to defame, and conspiracy to violate the ADEA. Moreover, because the only remaining claim is the ADEA claim and because the ADEA claim is viable against only Shook's employers, there are no remaining claims against the individual defendants and they are therefore entitled to be dismissed as defendants from the suit. In addition, because Shook's wife is seeking relief on only the meritless defamation and the conspiracy-to-defame claims, she is due to be dismissed as a plaintiff.

Accordingly, it is ORDERED as follows:

(1) The defendants' motion for partial summary judgment, filed May 4, 1999, and

**1182**

the defendants' motion for summary judgment, filed July 21, 1999, are granted to the extent that Judgment is entered in favor of all defendants and against the plaintiffs on the claims of defamation, conspiracy to defame, and conspiracy to violate the ADEA.

(2) The motions are denied as to the plaintiff Gerald J. Shook's ADEA claim against defendants St. Bede School and the Catholic Archdiocese of Mobile.

Furthermore, because the only remaining claim is the ADEA claim and because the only parties to the ADEA claim are plaintiff Gerald J. Shook and defendants St. Bede School and the Catholic Archdiocese of Mobile, it is ORDERED that:

(1) Plaintiff Rose M. Shook is dismissed.

(2) All individual defendants—that is, David J. Tokarz, Pastor of St. Bede the Venerable Catholic Church; Thomas L. Doyle, Vicar of the Department of Education; Oscar H. Lipscomb, Archbishop of the Department of Catholic Schools; Gwen Byrd, Superintendent of Schools; Eleanor McCormack, current principal of St. Bede School; and individually named members of the school council, including Mike Barranco, John Houston, Paula Roberts, Fran Smith, Cindi Staub, David Tyner, and Brett Wilkinson—are dismissed.